IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MAURICE T. NEWTON, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-191 |
| | ) | |
| CHESTER HUFFMAN and | ) | |
| REGINALD WARD, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, a prisoner at the Charles B. Webster Detention Center ("Webster Detention Center") in Augusta, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Before the Court are Defendants' motion for summary judgment and motion to dismiss. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **DENIED AS MOOT** (doc. no. 26), Defendants' motion for summary judgment be **GRANTED** (doc. no. 25), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

**I. PROCEDURAL BACKGROUND**

Because Plaintiff is proceeding IFP, the Court screened Plaintiff's original complaint in compliance with the IFP statute, 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff alleged that after an August 4, 2012 suicide attempt, he was confined "for thirty days to a suicide watch cell that did not have a toilet or a sink." (Doc. no. 10, p. 2 (citing doc. no. 1, p. 13).) The

Court found that, liberally construing the allegations, placement in a cell with no toilet or sink for thirty days could rise to the level of a constitutional violation, but Plaintiff had not provided enough details about the involvement of any particular Defendant in Plaintiff's assignment to the cell. (Id. at 3.)

The Court ordered Plaintiff to file an amended complaint about "all claims pertaining to his confinement in the suicide watch cell that he wishes the Court to consider as a basis for awarding the relief sought." (Id. at 5.) The Court also issued a Report and Recommendation ("R&R") on March 26, 2014, that recommended dismissal of Plaintiff's claims alleging deliberate indifference to a serious medical need. (Doc. no. 11.) Despite the Court's instructions, and in lieu of objections to the Court's R&R, Plaintiff filed an amended complaint as to both his conditions of confinement claim and his deliberate indifference claims.[1] Therefore, the Court vacated its March 26th R&R and re-screened the amended complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

The amended complaint alleged a cell with feces covering the floor and walls, flooding and unpleasant odors from neighboring cells, no toilet, no running water, no tissue paper, and no hand sanitizer. (Doc. no. 13, p. 12.) Plaintiff alleged his meals were served on the floor and that for several days he was not given any water to drink. (Id.) Plaintiff no longer mentioned the word "suicide," and he did not state how long he remained in the unspecified cell he described. The Court directed that service of process be effected on Defendants Ward and Huffman "based on [Plaintiff's] allegations concerning the conditions of his confinement in the lockdown cell." (Doc. no. 15, pp. 3-4.) However, the Court again

---

[1] Plaintiff amended his claims on two complaint forms. (See doc. no. 13). Because they were both dated April 7, 2014 and submitted together, the Court read them in conjunction.

2

recommended dismissing his claims alleging deliberate indifference to a serious medical need, as well as two other Defendants. (Doc. no. 16.) United States District Judge J. Randal Hall adopted this Court's recommendation, without objection from any party, and dismissed all claims related to allegations of deliberate indifference to a serious medical need. (Doc. no. 19.) Despite the dismissal, Plaintiff has repeatedly submitted irrelevant information related to medical care at Webster Detention Center.

Defendants moved for summary judgment based on the conditions in the cell in which Plaintiff resided immediately after his suicide attempt, which is documented to have occurred on August 10, 2012. (Doc. no. 26.) In the original complaint, Plaintiff mistakenly alleged the date to be August 4, 2012. (Doc. no. 1, p. 10.) He never specifies an attempted suicide date in the amended complaint. In support of their motion, Defendants filed affidavits describing the events surrounding Plaintiff's suicide attempt and the conditions of his confinement while on suicide watch. (Id., Exs. A-C.) Plaintiff responded with unsworn claims about the conditions of his confinement in two different cells, the suicide watch cells in "G-Pod," and "the Hole" in "F-Pod," and he provides descriptions of each type of cell that differs from his amended complaint. (Doc. no. 31, pp. 5, 6.) Because it is well-settled that a party may not add new claims through arguments in a brief opposing summary judgment, the Court will discuss the only claim raised in the amended complaint that the Court allowed to go forward, *i.e.*, the conditions of confinement while Plaintiff was on suicide watch from August 10, through August 14, 2012. See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004).

## II. THE SUMMARY JUDGMENT RECORD

Where Plaintiff has failed to properly dispute a material fact in Defendants' statement of facts, the Court has deemed that fact undisputed pursuant to Fed. R. Civ. P. 56(e) and Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Despite receiving a lengthy extension of time to respond, (see doc. nos. 28-30), Plaintiff's opposition papers contain nothing but unsworn diatribes and conclusory allegations, none of which are admissible evidence for purposes of opposing Defendants' motion for summary judgment. See Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (granting summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment.").

However, the Court has considered at summary judgment the allegations made with specificity in Plaintiff's verified amended complaint because Plaintiff attested them to be true under penalty of perjury. See 28 U.S.C. § 1746; Federal Rule of Civil Procedure 56(e); United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1444 (11th Cir. 1991); see also Howard v. Memnon, 572 F. App'x 692, 694 (11th Cir. 2014) ("A *pro se* plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence."). Nonetheless, "[u]nsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for

summary judgment." Howard, 572 F. App'x at 695 (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)).

Since Defendants filed their motion for summary judgment, Plaintiff has complained that there is evidence available to support his claims in the form of grievances, video surveillance, and log book entries that Plaintiff has been unable to obtain. (See doc. nos. 29, 31, 34.) However, the record does not reflect that Plaintiff filed a motion to compel at any time during the discovery period. Early on in this case, the Court provided Plaintiff with instructions on how to pursue discovery and what to do if he needed to file a motion to compel. (See doc. no. 15, pp. 5-6.) That Plaintiff chose not pursue discovery during the designated discovery period does not excuse him from compliance with the rules governing discovery and summary judgment. Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989)("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); see also Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, 'we nevertheless have required them to conform to procedural rules.'").

## III. FACTS

The two Defendants in this case are Chester Huffman, a former captain in the Richmond County Sheriff's Office, and Reginald Ward, a deputy who worked at Webster Detention Center.[2] Plaintiff alleges in the sworn amended complaint that, on August 4, 2012, he was placed in a cell in which "feces cover [sic] the floor and walls." (Doc. no. 13, p. 12.) The

---

[2]The Court **DIRECTS** the **CLERK** to update the docket with Defendant Reginald Ward's full name.

5

cell had no toilet, and instead Plaintiff used a "3 inch metal grated hole" in the floor. (Id.) Sewage from flushing toilets on the neighboring cell blocks "flow[ed] through" the hole in the floor, causing flooding and an unpleasant odor in the cell. (Id.) The cell had no running water. (Id.) Plaintiff failed to allege critical details, including how long he stayed in this cell, whether the floor and walls were cleaned at any time during his stay, or how often and to what extent his cell flooded with sewage from neighboring cells.

Plaintiff asked Defendant Ward to provide him with hand sanitizer and to remove him from the cell, but his requests were denied. (Id.) Plaintiff was not provided any tissue paper while in the cell, was required to eat his meals in the cell, and was denied water to drink for "several" days. (Id.) Defendant Huffman "approve[d] of this confinement area" and is the "designated authority of inmate punishment and treatment and housing and welfare." (Id.) Plaintiff seeks a declaration that his rights were violated and monetary damages for the alleged violation. (Id. at 13.)

Defendants' description of Plaintiff's living conditions immediately after his suicide attempt is in stark contrast to Plaintiff's version. By sworn affidavit, Defendant Ward avers that he worked at Webster Detention Center at all times relevant to the events of this case and that he knows Plaintiff. (Ward Aff. ¶¶ 2-3.) Defendant Ward describes how on August 10, 2012, Plaintiff tied around his neck one end of several bed sheets that had been joined together, tied the other end of the joined bed sheets around a balcony rail, and tried to jump over the rail. (Id. ¶ 4.) Defendant Ward pulled Plaintiff away from the rail and attempted to untie the sheets from his neck. (Id. ¶ 5.) After the suicide attempt, Plaintiff was placed in Suicide Watch Cell #1 for his safety and the safety of inmates and staff. (Id. ¶ 6.)

6

Defendant Huffman was in charge of operations at Webster Detention Center, but did not draft or personally approve facility operation or management policies, at all times relevant to this action. (Huffman Aff. ¶¶ 2-4.) He personally reviewed log entries that deputies on duty in the security booths were required to keep, as well as disciplinary reports and watch sheets related to Plaintiff. (Id. ¶¶ 6, 8.) The records confirm that Plaintiff attempted suicide on August 10, 2012, was placed in a suicide watch cell, and received a Disciplinary Report for engaging "in activities that constituted a major infraction of facility rules." (Id. ¶¶ 8, 10, 11; see also doc. no. 25, Ex. A.)

Unlike a regular cell, a suicide watch cell has no sink or toilet. (Ward Aff. ¶ 8.) Rather, there is a camera in the corner of the room, a cinder-block bench, and a hole in the floor through which an inmate can relieve himself. (Id.) Although Defendant Ward provides no dimensions for the hole in the floor, Defendant Huffman avers that it is "a deep, 8-inch in diameter hole." (Huffman Aff. ¶ 13.) There is no overflow from the hole in the floor because it is connected to a long pipe leading directly to the sewage drain, and upon finishing using the hole, the inmate notifies the warden via intercom or motioning to a deputy in the security booth to flush away the waste. (Ward Aff. ¶¶ 9-10.)

According to Tim Pratt, the Operations Supervisor of Facility Maintenance and Operations for Richmond County, because the hole is connected to a pipe leading directly to the sewage drain, unless an inmate inside the cell tampers with the hole by deliberately wedging something into the hole, it cannot overflow or flood. (Pratt Aff. ¶¶ 2, 6-7.) The maintenance department did not receive any urgent calls or work orders related to the plumbing in any suicide watch cell in which Plaintiff was housed from August 10 to August

14, 2012, and Mr. Pratt is not aware of any overflow in Plaintiff's cells during the relevant time period. (Id. ¶¶ 10-11.)

While Plaintiff was on suicide watch, deputies on duty – typically two walking the floor and one in the security booth – would check on him and other inmates on suicide watch every fifteen minutes. (Ward Aff. ¶¶ 12-13; Huffman Aff. ¶ 18.) An inmate on suicide watch can request water or toiletry products via use of the intercom inside the cell or alerting the deputies on duty by tapping on the door or waiving to get the deputies' attention. (Ward Aff. ¶ 14; Huffman Aff. ¶ 19.) Inmates on suicide watch are provided three meals per day, including coffee, juice, milk, or Kool-Aid, and are allowed to shower once per day. (Ward Aff. ¶ 15; Huffman Aff. ¶ 20.)

By rule, deputies clean the suicide watch cells every other day with bleach, floor cleaner, antibacterial products, and a mop, but will clean the cells more frequently if the need arises. (Ward Aff. ¶ 16; Huffman Aff. ¶ 21.) Suicide Watch Cell #1 was clean and sanitary when Plaintiff arrived there on August 10, 2012, and Defendant Ward never saw Plaintiff in a cell covered in feces or any other bodily waste. (Ward Aff. ¶¶ 17, 19.) Log entries from deputies on duty at the relevant time do not show any complaints by Plaintiff about the condition of his suicide watch cells with respect to feces or other substances on the floor or walls, and the entries confirm that even though Plaintiff refused to accept it on multiple occasions, Plaintiff was provided food – including a drink - three times per day. (Huffman Aff. ¶¶ 24, 27; see also Ward Aff. ¶ 25.)

The hole in the floor of the suicide watch cell, used in place of a conventional toilet, was in proper working order while Plaintiff was in Suicide Watch Cell #1, as was the hole in

8

Suicide Watch Cell #2, where Plaintiff was moved after he complained that Cell #1 was too cold. (Ward Aff. ¶¶ 21-22.) Plaintiff was not denied use of toilet paper, and Defendant Ward provided Plaintiff toilet paper upon request. (Id. ¶ 23.) Plaintiff never requested hand sanitizer from Defendant Ward. (Id. ¶ 24.) Plaintiff never requested water from Defendant Ward, or indicated to Defendant Ward that he was in physical distress or had issues concerning the condition of his cell, and Defendant Ward never observed Plaintiff having physical injuries or bodily distress while in a suicide watch cell from August 10, 2012 until August 14, 2012. (Id. ¶¶ 4, 21, 25-27.)

Plaintiff was released from suicide watch status on August 14, 2012, after Wesley McCarthy, a Licensed Professional Counselor (LPC) with Correct Care Solutions, recommended Plaintiff's return to any housing deemed appropriate by the Jail Administration. (McCarthy Aff. ¶¶ 2, 11-12; see also doc. no. 25, Ex. B.) LPC McCarthy first met with Plaintiff after his suicide attempt on Monday, August 13, 2012, because Correct Care Solutions is not open on the weekends. (McCarthy Aff. ¶¶ 5, 8.) During LPC McCarthy's interaction with Plaintiff, he did not appear to be physically distressed, and during follow up visits with Plaintiff within twenty-four hours, and then again thirty days, after his release from suicide watch on August 14, 2012, Plaintiff did not voice any complaints about the conditions of any of his suicide watch or regular cells. (Id. ¶¶ 13-14.)

## IV. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(a). If the burden of proof at trial rests with the movant, to prevail at summary judgment, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at summary judgment either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

> **B.  Defendants Are Entitled to Summary Judgment Because the Undisputed Facts Show That the Confinement Conditions Alleged Were Not Sufficiently Extreme and That Defendants Were Neither Subjectively Aware Nor Deliberately Indifferent to a Serious Risk of Harm.**

"[T]he Constitution does not mandate comfortable prisons." Chandler v. Crosby, 379

F.3d 1278, 189 (11th Cir. 2004) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Rather, the Eighth Amendment requires that prisoners are afforded adequate food, clothing, shelter, and medical care, and prison officials must take reasonable measures to ensure prisoner safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "Inmates cannot expect the amenities, conveniences and services of a good hotel." Alfred v. Bryant, 378 F. App'x 977, 980 (11th Cir. 2010).

Challenges to conditions of confinement are subject to a two-part analysis. Chandler, 379 F.3d at 1289. First, Plaintiff must satisfy an objective prong by showing the conditions about which he complains are sufficiently serious. Id. The conditions of his confinement must be "extreme" such that it "poses an unreasonable risk of serious damage to his future health or safety." Id.; see also Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010); Ivory v. Warden, 600 F. App'x 670, 676 (11th Cir. 2015). "The risk must be 'so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" Redding v. Georgia, 557 F. App'x 840, 843 (11th Cir. 2014) (citing Helling v. McKinney, 509 U.S. 25, 33 (1993)).

Second, Plaintiff must satisfy a subjective prong by showing that Defendants acted with a culpable state of mind, which is judged under a "deliberate indifference" standard. Chandler, 379 F.3d at 1289. "Proof of deliberate indifference requires a great deal more than does proof of negligence." Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013). The prison official must know of and disregard an "excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

11

also draw that inference." Id.

Plaintiff must shoulder a three part burden to establish deliberate indifference by showing Defendants not only had (1) subjective knowledge of a risk of serious harm, but they also (2) disregarded that risk, (3) by conduct that is more than gross negligence. See Goebert v. Lee County, 510 F.3d 1312, 1326-27 (11th Cir. 2007). A prison condition does not violate the Eighth Amendment unless it involves "the wanton and unnecessary infliction of pain." Chandler, 379 F.3d at 1289. The undisputed facts show that Plaintiff cannot satisfy either the subject or objective prongs of the analysis.

### 1. The Alleged Conditions Were Not Sufficiently Extreme to Pose An Unreasonable Risk Of Serious Injury to Future Health Or Safety.

The undisputed facts show Plaintiff was placed on suicide watch after he tried to hang himself by jumping over a balcony railing with sheets tied around his neck. (Ward Aff. ¶¶ 4-6.) He was placed in the cell for his own safety on Friday, August 10, 2012, and was seen by a Licensed Professional Counselor on Monday, August 13, 2012 when Correct Care Solutions re-opened after having been closed for the weekend. (Id. ¶ 6; McCarthy Aff. ¶¶ 5, 8.) Plaintiff was released on August 14, 2012, the day LPC McCarthy advised that he could be returned to any housing deemed appropriate by jail administrators. (McCarthy Aff. ¶¶ 11-12.) Plaintiff complains about the conditions of his suicide watch cells, but as explained below, the conditions were, at most, unpleasant, and not the type of extreme conditions that pose a risk of harm so grave as to violate contemporary standards of decency. See Chandler, 379 F.3d at 1289.

To the extent Plaintiff complains that he was forced to relieve himself in a hole in the floor rather than a toilet, there is no constitutional requirement for access to a working toilet.

12

Indeed, courts within the Eleventh Circuit have repeatedly refused to find Eighth Amendment violations based on short term unavailability of traditional toilets with or without ideal water pressure, or exposure to overflowing toilets. See, e.g., Alfred, 378 F. App'x at 980 (affirming dismissal of Eighth Amendment claim based on confinement in cell for eighteen days without properly functioning toilet); Anderson v. Chapman, No. 312-CV-88, 2013 WL 4495827 (M.D. Ga. 2013) (granting defendants summary judgment where prisoner alleged placement on suicide watch for five days with no access to clothing, mattress, blanket, toilet paper, water or showers, and forced sleeping on floor with dried urine, blood and feces), aff'd, 604 F. App'x 810, 814 (11th Cir. 2015); Dixon v. Toole, CV 104-183, 2006 WL 1038433, at *5 (S.D. Ga. Apr. 13, 2006) (Bowen, J.) (finding no Eighth Amendment violation for similar suicide watch cell at Webster Detention Center, including hole in floor for toilet), aff'd, 225 F. App'x 797, 799 (11th Cir. 2007).

Plaintiff alleges in his amended complaint that he was given no water to drink. In response, Defendants have submitted undisputed evidence that, while he may not have been offered any water, each day he was offered three meals complete with his choice of either coffee, juice, milk, or Kool-Aid. (Ward Aff. ¶¶ 15, 25; Huffman Aff. ¶¶ 20, 27.) There is obviously no constitutional violation in failing to include water to a varied menu of coffee, juice, milk, and Kool-Aid.

More concerning is Plaintiff's allegation in the amended complaint of feces on the floor and walls when he arrived at the first suicide cell. (Doc. no. 13, p. 12.) Importantly, however, the amended complaint is missing critical details, such as quantity, method and manner of distribution on the floor and walls, when the problem began, or whether he made

any attempt to notify Defendants. At summary judgment, Defendants assert by sworn affidavit that there were no unsanitary conditions observed in either Suicide Watch Cell #1 or #2 while Plaintiff resided therein. (Ward Aff. ¶¶ 17, 19; Huffman Aff. ¶ 24.) Moreover, pursuant to detention center policy, Defendants state that deputies thoroughly cleaned the suicide cells at least every other day. (Huffman Aff. ¶ 21.) Importantly, it is undisputed that, at some point during his five-day stay on suicide watch, Plaintiff was moved to another cell not because he complained about unsanitary conditions, but instead merely because he complained that the first cell was too cold. (Ward Aff. ¶ 21.)

In the face of this veritable mountain of evidence casting serious doubt on the vague assertions of uncleanliness in the amended complaint, Plaintiff failed to submit any admissible evidence in rebuttal. Just as damning is the shift in direction Plaintiff attempted in his summary judgment filings, which attempt to re-characterize the case as one involving not the conditions of the suicide watch cells in G-pod, but instead the conditions of an entirely different set of cells in F-pod. (See doc. no. 31, pp. 6, 8,13; doc. no. 34, p. 2.)

Plaintiff also alleges in the amended complaint that he was denied toilet paper and dealt with overflow from the toilet hole, but he again fails to provide critical details such as (1) who denied him toilet paper, why, when, and how many times; (2) how many times the toilet hole overflowed, why, when, to what extent, and how frequently; and (3) as to both the toilet paper and overflow problem, whether Defendants were aware of these problems and whether he made any attempt to notify Defendants. (Doc. no. 13, p. 12.) In stark contrast, Defendants submitted sworn affidavits that Plaintiff was provided toilet paper on request, the toiletry facilities could not overflow unless the inmate in the cell did something to clog the

14

facilities, and there were no reports of problems with the toiletry facilities while Plaintiff was on suicide watch. (Ward Aff. ¶ 22-23; Huffman Aff. ¶ 25; Pratt Aff. ¶¶ 6, 10-11.) Plaintiff failed to submit any sworn statements to rebut these specific allegations, leaving the Court only with the generalized allegations of the verified amended complaint. Those general allegations are insufficient to create an issue of material fact.

### 2. The Undisputed Facts Show That Defendants Were Not Subjectively Aware of the Alleged Cell Conditions, And That They Did Not Deliberately Disregard Any Risk of Harm Presented By the Cell Conditions.

Plaintiff has submitted nothing to refute the sworn evidence from Defendants that they did not know anything about the conditions that Plaintiff alleges to have existed in his suicide watch cells. Defendants have sworn that they never observed Plaintiff in an unsanitary cell and that there is no record of Plaintiff ever requesting to be removed from his cell because of the conditions he alleges. (Ward Aff. ¶¶ 18-19; Huffman Aff. ¶ 24.) In addition, pursuant to detention center policy, there was no reason for Defendants to suspect the filthy conditions alleged by Plaintiff because deputies thoroughly cleaned the suicide watch cells every other day, or more frequently if needed. (Ward Aff. ¶ 16; Huffman Aff. ¶ 21.) Nor is there any evidence to suggest that Plaintiff ever complained about the condition of his suicide watch cells or appeared to be in physical distress while residing therein. (Ward Aff. ¶¶ 21, 25-27; Huffman Aff. ¶¶ 21, 24; McCarthy Aff. ¶¶ 13-14.) Likewise, there is no evidence that either Defendant knew about any toiletry facility problems, as the evidence confirms that the maintenance department has no record of any reported problem during the relevant time period. (Pratt Aff. ¶ 10.)

Finally, other than general discomfort, Plaintiff's only alleged injury was a rash and non-descript sores that do not pose the type of unreasonable risk of serious injury needed for this type of claim. See Ayton v. Toby, CV 312-080, 2013 WL 4482448, at *5 n.4 (S.D. Ga. Aug. 19, 2013) (Bowen, J.) (finding purported rash similar to injuries previously determined by Eleventh Circuit – stiffness, lower back pain, headaches, vomiting, constipation, grief, anxiety, distress, and fear - not to pose unreasonable risk of serious damage to health or safety for purposes of Eighth Amendment claim).

Accordingly, even when the facts are viewed in the light most favorable to him, Plaintiff cannot establish that Defendants were either subjectively aware of the alleged cell conditions or deliberately disregarded any serious risk of harm presented by those conditions. See Farmer, 511 U.S. at 837.

### C. Even if Plaintiff's Claim Could Survive Summary Judgment, the Undisputed Facts Show That He Could Not Recover Compensatory or Punitive Damages Because the Rash and Sores He Allegedly Suffered Are *De Minimis*.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "[C]laims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (affirming dismissal under § 1997e(e) of prisoner's claims for monetary damage because prisoner's complaints of vague injuries to back and scrapes and marks on knees and legs did not amount to more than *de minimis* physical injury); see also Nolin v. Isbell, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (bruises received during arrest were non-actionable *de minimis* injuries); Quinlan v. Personal

16

Transp. Servs. Co., 329 F. App'x 246, 249 (11th Cir. 2009) (dismissing claims for compensatory and punitive damages despite complaints of temporary chest pain, headache, difficulty breathing, and continuous back pain because conditions did not require immediate medical attention or evidence physical injury besides discomfort).

The statute's clear and broad language encompasses all claims, including constitutional claims, and provides for no exceptions. Al–Amin v. Smith, 637 F.3d 1192, 1197 (11th Cir. 2011) (precluding plaintiff from offering evidence to support award of punitive damages for alleged First Amendment violation where he did not allege physical injury). In the Eleventh Circuit, no distinction is made between "constitutional claims frequently accompanied by physical injury (e.g., Eighth Amendment violations) and those rarely accompanied by physical injury (e.g., First Amendment violations)[;]" all constitutional claims are treated equally. Id.; Logan v. Hall, 604 F. App'x 838, 840 (11th Cir. 2015) (no compensatory or punitive damages under § 1997e(e) for mental or emotional injury without prior showing of physical injury or commission of sexual act). Nevertheless, "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003).

Here, Plaintiff makes general allegations of discomfort and allegations about a non-descript rash and/or sores he may have acquired during his five days in a suicide watch cell. (Doc. no. 13, pp. 12-13.) However, such allegations do not amount to more than *de minimis* physical injury. Confirming the *de minimis* nature of the alleged rash and sores is the undisputed fact, supported by multiple defense affidavits, that there was no documentation or

17

personal observation of Plaintiff exhibiting any physical distress or complaints about his cells during his time on suicide watch. (See doc. no. 25, Ex. C.)

Because Plaintiff has not alleged a physical injury that is greater than *de minimis*, he cannot recover compensatory and punitive damages. Al–Amin, 637 F.3d at 1197-98; Mann, 360 F. App'x at 32. Therefore, Plaintiff's monetary recovery is limited to nominal damages. Hughes, 350 F.3d at 1162. However, for the reasons set forth above, the Court finds that Plaintiff is not entitled to nominal damages, or the declaratory judgment he seeks.

### D. Motion to Dismiss

At the same time Defendants filed their motion for summary judgment, they also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that the complaint should be dismissed for failure to state a claim. (Doc. no. 26.) They also moved to dismiss based on qualified immunity, official immunity, sovereign immunity, and 11th Amendment immunity. (Id. at 3.) According to Rule 12(b), a motion to dismiss based on failure to state a claim "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b)(6). Defendants filed their answer in this case on June 24, 2014, but did not move to dismiss until after the close of discovery, on December 10, 2014, the last day for filing motions in the case. The Court will not consider the motion to dismiss because it is untimely, see Nowak v. Lexington Ins. Co., 464 F. Supp.2d 1248, 1249 (S.D. Fla. 2006), and because, as discussed above, Defendants are entitled to summary judgment. Accordingly, the motion to dismiss should be denied as moot.

## V.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **DENIED AS MOOT** (doc. no. 26), Defendants' motion for summary judgment be **GRANTED** (doc. no. 25), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 4th day of August, 2015, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA